[Cite as *DN Reynoldsburg, L.L.C. v. Maurices Inc.*, 2022-Ohio-949.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DN Reynoldsburg, LLC, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 20AP-57 |
| v. | : | (C.P.C. No. 18CV-7616) |
| Maurices Incorporated, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 24, 2022

**On brief**: *Carpenter, Lipps & Leland LLP, David A. Wallace*, and *Karen M. Cadieux*, for appellant. **Argued**: *David A. Wallace.*

**On brief:** *Perez & Morris LLC, Kevin L. Murch*, and *Juan Jose Perez*, for appellee. **Argued**: *Kevin L. Murch.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, DN Reynoldsburg, LLC, appeals from the January 7, 2020 decision and entry by the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, Maurices Incorporated, and the trial court's September 16, 2020 entry granting appellee's motion for attorney fees. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is the landlord of Shoppes at East Broad Street ("Shopping Center"), a shopping center located in Reynoldsburg, Ohio. Appellee is a women's clothing store that operates three[1] locations within the central Ohio area.

---

[1] This figure excludes the store at issue in this case.

{¶ 3}    In July 2015, the parties entered into a commercial lease agreement in which appellant leased appellee space for the purposes of operating a retail store at the Shopping Center. In exchange, appellee was to pay "Annual Minimum Rent" of $7,083.33 per month, plus the pro rata share of real estate taxes, common area maintenance costs, and insurance premiums. Relevant to the instant case, Section 8.03 of the lease agreement sets forth the rights and obligations of the parties as they relate to the co-tenancy of the Shopping Center. These provisions set forth the rights of appellee if "Inducement Tenants"[2] were not operating at the Shopping Center when appellee opened for business. Section 8.03(b) addresses the opening requirements for the parties:

> Opening Requirements: Notwithstanding anything set forth in this Lease to the contrary * * * Tenant will not be required to * * * pay Annual Minimum Rent, Percentage Rent and Additional Charges and any other charges to be paid by Tenant until such time as all of the Inducement Tenants are opened and operating in the Shopping Center (the "Opening Co-Tenancy Requirement"). * * * If the Opening Co-Tenancy Requirement is not met as of the Commencement Date, then, if Tenant nevertheless elects to take possession of the Premises and open, during the period from the Commencement Date until the fulfillment of the Opening Co-Tenancy Requirement (the "Interim Period"), Tenant shall have the right to pay to Landlord Substitute Rent during the Interim Period.

{¶ 4}    The term "Substitute Rent" was defined as "[f]ive percent (5%) of Tenant's Gross Sales (as defined in Section 4.02(b) herein) from the Premises, in arrears on a monthly basis, in lieu of Annual Minimum Rent, Percentage Rent, and Additional Charges." (Section 1.01(v).) The lease also provided that appellee could terminate the lease agreement and be repaid out-of-pocket expenses incurred in preparation for taking possession and completing tenant's work, if the co-tenancy requirements were not met within 18 months after possession of the premises was tendered. (Section 8.03(b).)

{¶ 5}    Section 8.03(c) sets forth the ongoing co-tenancy requirements stating:

> An "Ongoing Co-Tenancy Violation" shall exist if * * * there is less than both of the Anchor Tenants[3] (or a Comparable Replacement for each Anchor Tenant as defined herein) open and operating in the Shopping Center * * *. In the event of an Ongoing Co-Tenancy Violation, Tenant shall have the right,

---

[2] The Inducement Tenants identified in the lease agreement were Sports Authority, TJ Maxx, and PetCo. Section 101(l).

[3] The Anchor Tenants identified in the lease agreement were Sports Authority and TJ Maxx. (Section 101(n).)

> retroactive to the first day that the Ongoing Co-Tenancy
> Violation exists, to pay Substitute Rent.

*Id.*[4]

{¶ 6}  The lease provided for replacement of Anchor Tenants in Section 8.03(c), defining "comparable replacement" as "a national or regional retail tenant with a use comparable to the Anchor Tenant being replaced and operating in not less than seventy-five percent (75%) of the same leasable space utilized by the replaced Anchor Tenant."  As set forth in Section 8.03(d) of the lease agreement, the parties acknowledged that the co-tenancy conditions are an express inducement for appellee to enter into the lease agreement at the Shopping Center.[5]  The lease agreement also stated that if "either party shall file any proceeding against the other party for breach or default under this Lease * * * the party prevailing shall be entitled to receive reimbursement from the other party for its reasonable attorneys' fees and court costs."  (Section 18.03.)

{¶ 7}  Approximately six months after the parties entered into the lease agreement, ports Authority, identified in the lease agreement as both an Anchor and Inducement Tenant, filed for bankruptcy prior to occupying the premises at the Shopping Center. Appellee opened its location at the Shopping Center in August 2016.

{¶ 8}  Appellant and Rooms for Less, a furniture store, entered into a contract to occupy the premises previously intended for Sports Authority.  On or about September 29, 2017, Rooms for Less opened at the Shopping Center.  Appellant notified appellee that the co-tenancy provision of the lease was satisfied with the opening of Rooms for Less, and appellee should begin to pay the Annual Minimum Rent of $85,000 or $7,083.33 per month with the pro rata share of real estate taxes, common area maintenance costs, and insurance premiums as of November 2017.  (Sections 1.01(g), (j) and Article IV.)  Appellee

---

[4] Appellee could again terminate the lease for an ongoing co-tenancy violation after 30 consecutive months after the first day that the ongoing co-tenancy violation existed. (Section 8.03(c).) "If Tenant does not terminate this Lease pursuant to the immediately preceding sentence, then Tenant shall have no further right to terminate this Lease as a result of that particular Ongoing Co-Tenancy Violation, and Tenant shall resume paying Annual Minimum Rent, Percentage Rent and Additional Charges as required by this Lease effective as of the day after such 60-day period." *Id.*

[5] Section 8.03(d) provides:

> The co-tenancy requirements set forth in Sections 8.03(b) and (c) are referred to herein as the "<u>Co-Tenancy Conditions</u>." Landlord acknowledges and agrees that the Co-Tenancy Conditions are an express inducement for Tenant to enter into this Lease and to operate its business in the Shopping Center, and that Tenant would not otherwise enter into this Lease without the Co-Tenancy Conditions.

informed appellant that under its interpretation of the lease, appellee was entitled to continue to pay Substitute Rent as it had the option of paying Substitute Rent during the period when less than all of the Inducement Tenants were open and operating in the Shopping Center.

{¶ 9} On September 9, 2018, appellant filed its initial complaint asserting a cause of action for breach of contract alleging appellee breached the lease agreement by failing to pay full rent on the premises. On October 10, 2018, appellee filed its answer denying it had breached the lease agreement asserting as a defense that it was entitled to continue to pay Substitute Rent because Sports Authority, an Inducement Tenant, did not open at the Shopping Center, therefore, appellant never satisfied its obligations under the lease. On May 7, 2019, appellant filed a motion for leave to file an amended complaint to add a declaratory judgment claim asking the court to declare whether the provision of the lease agreement operates as a penalty as it would allow appellee to pay reduced rent for the remaining term of the lease. The trial court granted the motion, and an amended complaint was filed on June 5, 2019. Appellee filed an amended answer on June 18, 2019.

{¶ 10} On October 3, 2019, appellant filed a motion for partial summary judgment arguing the trial court should strike "the opening co-tenancy provision in Section 8.03(b) from the Lease, and declar[e] that Section 8.03(c) and its replacement provisions are in effect." (Oct. 3, 2019 Appellant's Mot. for Summ. Jgmt. at 1.) Appellee filed a memorandum in opposition on October 24, 2019, arguing that the provision at issue was a condition precedent that if certain tenants are not in the location at the time of opening it was entitled to pay Substitute Rent. A reply brief was filed on October 30, 2019.

{¶ 11} Also on October 3, 2019, appellee filed a motion for summary judgment on the breach of contract and declaratory judgment claims. Appellee argued that under Section 8.03(b), it is entitled to reduced rent throughout the course of the lease agreement as Sports Authority never opened and, therefore, Section 8.03(b) of the lease was never satisfied. Appellee provided the alternative argument that, even if appellant could replace Sports Authority as a tenant, Rooms for Less did not constitute a comparable replacement as it was not a regional store selling a comparable product under the lease. On October 24, 2019, appellant filed a memorandum in opposition restating a similar argument presented in its motion for summary judgment and argued that there was a dispute of material fact as to whether Rooms for Less constituted a comparable replacement under the lease agreement. A reply brief was filed on October 30, 2019.

{¶ 12} On January 7, 2020, the trial court issued its decision and entry granting appellee's motion for summary judgment and denying appellant's motion for partial summary judgment. The trial court found the terms of the lease agreement were clear and unambiguous, and no extrinsic evidence offered by either party should be considered. The trial court concluded there was no dispute of material fact that Rooms for Less, a furniture store that exists solely in the Columbus area, cannot constitute a "comparable replacement" tenant as defined under Section 8.03(c) of the lease agreement.

{¶ 13} On January 20, 2020, appellee filed a motion for attorney fees and a motion for recovery of costs. On January 28, 2020, appellant filed a notice of appeal of the January 7, 2020 decision and entry. On February 27, 2020, appellant filed a motion to remand the case for a decision on the outstanding motions, which was granted by this court. (Mar. 2, 2020 Journal Entry.) On March 24, 2020, appellant filed memoranda in opposition to appellee's motion for attorney fees and motion for costs. Appellee filed its reply briefs on March 31, 2020. The trial court held oral arguments on the outstanding motions. On September 16, 2020, the trial court granted the motion for attorney fees but denied the motion for costs citing the Supreme Court of Ohio's decision in *Vossman v. AirNet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872. On October 16, 2020, appellant filed a motion to amend the previous notice of appeal to include the trial court's September 16, 2020 entry granting appellee's motion for attorney fees and to reactivate the appeal. On October 27, 2020, this court granted appellant's motion.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

> [1.] The trial court erred in granting summary judgment in favor of Maurices Incorporated because there was conflicting evidence on whether Rooms for Less qualified as a Comparable Replacement tenant under the Lease.

> [2.] The trial court erred in awarding attorney fees to Maurices Incorporated because Maurices did not prevail on the main issue in the case and was not the prevailing party.

## III. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 15} In its first assignment of error, appellant argues the trial court erred in granting appellee's motion for summary judgment.

{¶ 16} This court considers a trial court's grant of a motion for summary judgment under a de novo standard of review. *Capella III, LLC v. Wilcox*, 10th Dist. No. 10AP-206, 2010-Ohio-4746, ¶ 16, citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). " '[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision.' " (Internal quotations and citations omitted.) *2454 Cleveland, LLC v. TWA, LLC*, 10th Dist. No. 19AP-157, 2020-Ohio-362, ¶ 8, quoting *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is proper when " 'the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.' " *2454 Cleveland, LLC* at ¶ 8, quoting *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6.

{¶ 17} When ruling on a motion for summary judgment, the court must resolve all questions and construe the evidence in favor of the nonmoving party. *2454 Cleveland, LLC* at ¶ 8, citing *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8. As set forth in Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the grounds for the motion and identifying those parts of the record that demonstrate the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot satisfy this initial burden with a conclusory declaration that the nonmoving party has no evidence to prove its case; the moving party must identify specific evidence listed in Civ.R. 56(C) affirmatively showing that the nonmoving party has no evidence to demonstrate its claims. *Id.* Once the moving party satisfies this initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or other evidence as otherwise provided in Civ.R. 56, with specific facts demonstrating that a genuine issue exists for trial. *Dresher* at 293; Civ.R. 56(E). When the evidence offered allows conflicting inferences, the court reviewing a summary judgment motion may not weigh the evidence. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 20.

{¶ 18} In order to demonstrate a claim for breach of contract, a plaintiff must establish: "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 10th Dist. No. 16AP-685, 2018-Ohio-2602, ¶ 28, citing *Lucarell v. Nationwide*

*Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 41. "[T]o prove a breach by the defendant, a plaintiff must show that the defendant ' "did not perform one or more of the terms of a contract." ' " *Bechtel v. Turner*, 10th Dist. No. 19AP-686, 2020-Ohio-4078, ¶ 43, quoting *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.), quoting *Little Eagle Props. v. Ryan*, 10th Dist. No. 03AP-923, 2004-Ohio-3830, ¶ 15.

{¶ 19} When reviewing the terms of a contract, a court's central objective is to determine the intent of the parties. *Jezerinac v. Dioun*, 10th Dist. No. 18AP-479, 2020-Ohio-587, ¶ 33, citing *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999); *see also Keybank Natl. Assn. v. Columbus Campus, LLC*, 10th Dist. No. 11AP-920, 2013-Ohio-1243, ¶ 26, citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 247 (1974). When discerning the intent of the parties, a court must start with the language in the four corners of the document. *Min You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 19AP-733, 2020-Ohio-4661, ¶ 15, citing *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis*, 10th Dist. No. 09AP-06, 2009-Ohio-5671, ¶ 21, citing *Buckeye Corrugated, Inc. v. DeRycke*, 9th Dist. No. 21459, 2003-Ohio-6321. When " 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' " *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, ¶ 12, quoting *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). "Common words are given their typical meaning ' "unless another meaning is clearly evident from the face or overall content of the contract, or unless the result is manifestly absurd." ' " *You* at ¶ 15, citing *Guaranteed Constr. Servs. v. Grand Communities, Ltd.*, 10th Dist. No. 17AP-213, 2017-Ohio-9288, ¶ 24, quoting *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St.3d 29, 2015-Ohio-3716, ¶ 36. When the language of the contract is clear the courts need not look further than the language utilized in the agreement. *You* at ¶ 15, citing *Altercare of Canal Winchester Post-Acute Rehab. Ctr., Inc. v. Turner*, 10th Dist. No. 18AP-466, 2019-Ohio-1011, ¶ 19, quoting *Donini v. Fraternal Order of Police*, 4th Dist. No. 08CA325, 2009-Ohio-5810, ¶ 16.

{¶ 20} A provision of a contract is ambiguous if its meaning cannot be discerned from reading the entire contract or is susceptible to more than one reasonable interpretation. *Moody v. Ohio Rehab. Servs. Comm.*, 10th Dist. No. 02AP-596, 2002-Ohio-6965, ¶ 7, citing *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55 (2d Dist.1998). " 'Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract

with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions.' " *Moody* at ¶ 7, quoting *Shifrin* at syllabus. In resolving the intent of the parties in the agreement, a court must read the contract as a whole and give effect, when possible, to every provision in the agreement. *Clark v. Humes*, 10th Dist. No. 06AP-1202, 2008-Ohio-640, ¶ 12, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-62 (1997). While the issue of whether a contract is ambiguous is a question of law, the meaning of words or phrases in an ambiguous contract is a question of fact. *Atelier Dist. v. Parking Co. of Am., Inc.*, 10th Dist. No. 07AP-87, 2007-Ohio-7138, ¶ 17, citing *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.*, 65 Ohio App.3d 139, 146 (10th Dist.1989). If words or phrases have two reasonable interpretations, there is an issue of fact as to the intent of the parties. *You* at ¶ 23, citing *Career & Tech. Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 11th Dist. No. 2013-L-010, 2014-Ohio-1572, ¶ 18, citing *Salvato v. Salvato*, 11th Dist. No. 2013-T-0024, 2013-Ohio-5268, ¶ 40.

{¶ 21} Appellee opened for business at the Shopping Center in August 2016. Rooms for Less opened for business on September 29, 2017. There is no dispute that appellee was entitled to pay Substitute Rent between the period it opened at the Shopping Center to when Rooms for Less opened for business. The question before this court is whether the trial court erred in finding there is no dispute of material fact that Rooms for Less does not constitute a "comparable replacement" tenant under the lease agreement.

{¶ 22} Upon review, drawing all reasonable inferences in favor of appellant, there exists specific evidence from which the trial court should have concluded there is a genuine issue of material fact as to whether Rooms for Less constituted a "comparable replacement" under Section 8.03(c) of the lease. The term "comparable replacement" is defined as "a national or regional retail tenant with a use comparable to the Anchor Tenant being replaced and operating in not less than seventy-five percent (75%) of the same leasable space utilized by the replaced Anchor Tenant." (Section 8.03(c).) The contract, however, failed to define key terms such as "national," "regional," and "comparable" in the agreement. It is unclear from the four corners of the contract what the parties intended as to the type of company that would constitute a comparable replacement in this context. While appellant concedes that Rooms for Less is not a national retail tenant, the meaning of remaining terms in the lease agreement are ambiguous. Accordingly, we next look at the

extrinsic evidence provided to discern how the parties might have intended these terms to be applied under the lease agreement.

{¶ 23} After a review of the extrinsic evidence, the terms "regional" and "comparable" are susceptible to multiple reasonable interpretations. Grant Giltz, appellant's corporate representative, testified Rooms for Less satisfies the ongoing co-tenancy requirements stating Rooms for Less met the definition of a "regional" store as it had three locations in the central Ohio region. (Giltz Dep. at 139-40.) Giltz considered "regional" to include a company with multiple stores that occupy an area of a state. (Giltz Dep. at 138.) Moreover, Giltz noted that "regional" may also refer to where customers travel from to the store, not just their physical locations. Giltz testified that "comparable" in this context referred to a retail tenant. "[T]hey wanted another retail tenant in there * * * it's not a wholesaler * * * it sells its goods, you know, small quantities at a time, it's -- a lot of times, it's an impulse buy, more discretionary spending for these types of stores." (Giltz Dep. at 145.)

{¶ 24} Conversely, Robert Matias testified that he did not consider Rooms for Less a regional retail tenant.[6] While Matias focused his definition of "regional" on companies with stores across multiple states located in a single area of the country, e.g., the Midwest region, he acknowledged that "regional" could also refer to stores that are located in a single state. (Matias Dep. at 71; 84.)[7] When asked "if you have a certain region of a state, you're not saying that that absolutely means it can't be regional?", Matias responded, "Correct." (Matias Dep. at 85.) In response to whether Matias thought this definition of "regional" was in keeping with the International Council of Shopping Center's definition, Matias responded "I don't know * * * everybody's got sort of their own definition." (Matias Dep. at

---

[6] The trial court mistakenly referred to Matias as a "corporate representative for [appellant]" in the decision. (Jan. 7, 2020 Decision at 7.) Matias was employed by Equity Commercial Real Estate Solutions. Appellant entered into an agreement with Equity to help bring potential lessees to fill out the Shopping Center. Equity was paid a commission if a tenant that it identified entered into an agreement with and opened a store at the Shopping Center.

[7] Appellee also provided an affidavit of Theresa Wecker, an expert witness retained by appellee. Wecker's affidavit states:

> The term "regional" refers to a business operating in a geographic region such as the Midwest, Southeast, or Northeast. "Regional" also generally requires the business operate in several states. Although the phrase "regional" may be used to describe a business that operates stores throughout an entire state, operating in one city or metropolitan area in a single state is not considered regional. * * * Rooms for Less, with only four (4) stores in the Columbus, Ohio area, is not a "national" retail tenant. * * * Rooms for Less is also not a "regional" retail tenant as it only operates business covering a small metropolitan area of one state.

(Wecker Aff. at ¶ 24-26.)

71.)  Regarding whether Rooms for Less was considered "comparable" to Sports Authority, Matias responded "it depends on what -- 'comparable' could mean size. Yes, this would be comparable in size. It's a tough one. Without -- without further amplification of that it's -- it's -- that's impossible to answer." (Matias Dep. at 79-80.)

{¶ 25} Matias's deposition testimony hits on the central problem of this case: "everybody's got sort of their own definition."  (Matias Dep. at 71.)  A look at the variation in several traditional definitions of these terms underscores this point.[8]  Merriam-Webster defines "region" as "(1) an administrative area, division, or district * * *; (2)(a) an indefinite area of the world or universe; (b) a broad geographic area distinguished by similar features."  Merriam-Webster Dictionary, "region," https://www.merriam-webster.com/ dictionary/region (accessed March 4, 2022).[9]  Cambridge Dictionary defines "regional" as "relating to or coming from a particular part of a country." Cambridge Dictionary, "regional," https://dictionary.cambridge.org/us/dictionary/english/regional (accessed March 4, 2022).  Similarly, the definition of "comparable" provides little assistance on this issue. Merriam-Webster defines "comparable" as "(1) capable of or suitable for comparison * * * [;] (2) similar, like." Merriam-Webster Dictionary, "comparable," https://www.merriam-webster.com/dictionary/comparable (accessed March 4, 2022). Cambridge Dictionary defines "comparable" as "similar in size, amount, or quality to something else."  Cambridge Dictionary, "comparable," https://dictionary.cambridge.org/ us/dictionary/english/comparable (accessed March 4, 2022).

{¶ 26} Accordingly, considering the evidence most in favor of the nonmoving party, there is a dispute of material fact as to whether Rooms for Less constitutes a "comparable replacement" under Section 8.03(c) of the lease as a regional retail tenant with a use comparable to the tenant being replaced, i.e., Sports Authority.

{¶ 27} Appellee argues that its motion for summary judgment should still have been granted because "there was no dispute that [appellee] is only obligated to pay Substitute Rent due to the fact that not all of the Inducement Tenants opened in the Shopping Center.

---

[8] It is a well-established practice for courts to utilize dictionary definitions to discern the ordinary, everyday meaning of terms employed in contracts. *Carrizo (UTICA) LLC v. Girard*, 2015 U.S. Dist. LEXIS 40392, *24 (N.D.Ohio 2015), citing *Rite Aid of Ohio v. Marc's Variety Store*, 93 Ohio.App.3d 407, 415 (8th Dist.1994)(writing that dictionaries generally provide the best source for determining the ordinary meaning of contractual terms); *see also Andrews v. Tax Comm. of Ohio*, 135 Ohio St. 374 (1939) (concluding a court may take judicial notice of definitions in standard dictionaries).
[9] Appellant cites the 10th Edition of Merriman-Webster's College Dictionary in its brief as defining "regional" as "affecting a particular region: LOCALIZED," and "comparable" was defined as "similar" or "like." (Appellant's Brief at 27-28.)

Thus, by paying Substitute Rent, [appellee] satisfied its obligations under the Lease." (Appellee's Brief at 8-9.) This argument was presented in appellee's motion for summary judgment to the trial court. The trial court, however, failed to address this argument in its decision and exclusively relied on its determination that Rooms for Less did not constitute a "comparable replacement" under the lease. "Questions not addressed by the trial court generally will not be ruled on by the appellate court." *You* at ¶ 30, citing *Peterson v. Martyn*, 10th Dist. No. 17AP-39, 2018-Ohio-2905, ¶ 51, citing *Ochsmann v. Great Am. Ins. Co.*, 10th Dist. No. 02AP-1265, 2003-Ohio-4679, ¶ 21, citing *Mills-Jennings, Inc. v. Dept. of Liquor Control*, 70 Ohio St.2d 95, 99 (1982) (remanding the case to the trial court to consider the other grounds in appellees' motion for summary judgment previously addressed); *see also Wellman v. Salt Creek Valley Bank*, 10th Dist. No. 06AP-177, 2006-Ohio-4718, ¶ 11. Accordingly, we remand this matter back to the trial court to consider the other grounds in appellee's motion for summary judgment and for any further proceedings as may be appropriate.

{¶ 28} Appellant's first assignment of error is sustained.

### B. Appellant's Second Assignment of Error

{¶ 29} In appellant's second assignment of error, it alleges the trial court erred in awarding attorney fees to appellee as the prevailing party because it did not succeed on the main issue in its case. An issue is considered moot when "they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." (Internal quotations omitted.) *Doran v. Heartland Bank*, 10th Dist. No. 16AP-586, 2018-Ohio-1811, ¶ 12. Because we find that there is a dispute of material fact as to whether Rooms for Less constitutes a "comparable replacement" under Section 8.03(c) of the lease, a review of whether the trial court erred in awarding attorney fees to appellee as the prevailing party is premature. Accordingly, appellant's second assignment of error is moot.

## IV. CONCLUSION

{¶ 30} Having sustained appellant's first assignment of error, and finding appellant's second assignment of error moot, we reverse the judgment of the Franklin County Court of Common Pleas. This case is remanded to the Franklin County Court of Common Pleas to consider the other grounds in appellee's motion for summary judgment

and for such further proceedings consistent with this decision.   The September entry awarding attorney fees to appellee is vacated.

*Judgment reversed; cause remanded with instructions.*

SADLER and JAMISON, JJ., concur.

_____