[Cite as *MP Equip. Leasing, Inc. v. Pack*, 2024-Ohio-5495.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

MP Equipment Leasing, Inc. et al., :

    Plaintiffs-Appellees, :

                                                  No. 24AP-103

v. : (C.P.C. No. 18CV-6740)

James M. Pack, : (REGULAR CALENDAR)

    Defendant-Appellant. :

---

D E C I S I O N

Rendered on November 21, 2024

---

**On brief:** *Sander Law, LLC*, and *Neil C. Sander* for appellees.

**On brief:** *James M. Pack*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Defendant-appellant, James M. Pack, appeals from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of plaintiffs-appellees, MP Equipment Leasing, Inc. ("MP"), Chad M. Peterson, and Curtis Patnode (collectively, plaintiffs). For the reasons that follow, we reverse and remand.

## I. Facts and Procedural History

{¶ 2} On August 7, 2018, plaintiffs filed a complaint against Mr. Pack, Rush Creek Logistics, LLC ("Rush Creek"), and Peterson Trucking, LLC ("Peterson Trucking") (collectively, defendants) alleging a single claim for breach of contract. The events giving rise to the complaint resulted from Rush Creek's 2016 acquisition of Peterson Trucking.

{¶ 3} Prior to 2016, Peterson Trucking was a Wisconsin limited liability company operating a trucking business in Arkansaw, Wisconsin. MP, a Wisconsin corporation, was the sole member of Peterson Trucking. Mr. Peterson and Mr. Patnode were the

shareholders and officers of MP.  In the spring of 2016, Mr. Pack formed Rush Creek, an Ohio limited liability company, to acquire the membership units of Peterson Trucking from MP.  Mr. Pack was the sole member of Rush Creek.

{¶ 4}   Effective July 1, 2016, Rush Creek entered into a Membership Interest Purchase Agreement with MP agreeing to purchase all of MP's membership interest in Peterson Trucking.  (Compl., Ex. A "Purchase Agreement.")  The parties closed on the Purchase Agreement on August 25, 2016.  Thereafter, Mr. Pack became the sole member of Peterson Trucking.

{¶ 5}   To effectuate the sale, Rush Creek issued a $500,000 promissory note to MP payable in monthly installments.  (Compl., Ex. B "Rush Creek Note.")  Peterson Trucking also issued a $46,715.45 promissory note to Mr. Peterson payable in monthly installments with interest accruing at the rate of 4.95 percent per year.  (Compl., Ex. C "Peterson Trucking Note.")  The Rush Creek and Peterson Trucking Notes both provided that, upon default, the holder could declare the remainder of the debt due and payable and recover reasonable attorney fees and litigation costs from the maker.

{¶ 6}   In the Purchase Agreement, MP "represent[ed] and warrant[ed] to [Rush Creek] as of the Effective Date and the Closing Date" that "[t]o the best knowledge of MP[], * * * no employee or manager or officer has any plans to terminate employment with [Peterson Trucking]." (Purchase Agreement at section 2.8.)  Rush Creek acknowledged that the vehicles and trailers in the possession of Peterson Trucking were "leased and not owned by [Peterson Trucking]," and Rush Creek and Peterson Trucking agreed to "undertake reasonable efforts to remove Chad M. Peterson and Curtis Patnode as personal guarantors of any lease between [Peterson Trucking] and any third party."  (Purchase Agreement at section 4.4.) If Rush Creek and Peterson Trucking were "unable to effectuate such a release, James M. Pack [agreed] to indemnify Chad M. Peterson and Curtis Patnode from any loss or damage sustained by Chad M. Peterson or Curtis Patnode as a result of the personal guaranty(ies) issued by them with respect to any such lease" (the "Guaranty Indemnification").  (Purchase Agreement at section 4.4.)  Additionally, if either party had to file suit to enforce the Purchase Agreement, the prevailing party would be entitled to recover their reasonable attorney fees and court costs in such action. (Purchase Agreement at section 7.5.)

**{¶ 7}** On August 25, 2016, Peterson Trucking executed an Equipment Lease Agreement agreeing to lease three 2015 Timpte Trailers from MP and pay MP monthly rent. (Compl., Ex. D "Equipment Lease.") On September 1, 2016, Peterson Trucking executed a Real Estate Lease Agreement agreeing to lease from MP a portion of the building located at N6598 County Road D, Arkansaw, Wisconsin, and pay MP monthly rent. (Compl., Ex. E "Real Estate Lease.")

**{¶ 8}** On May 11, 2018, MP sent a demand letter to Rush Creek, Peterson Trucking, and Mr. Pack, demanding payment due under the Purchase Agreement, Rush Creek Note, Peterson Trucking Note, Equipment Lease, and Real Estate Lease. (Compl., Ex. F "Demand Letter.") The Demand Letter advised the defendants that, if they did not pay the past due amounts or respond to the letter by May 16, 2018, plaintiffs would be forced to commence a lawsuit against them.

**{¶ 9}** In the complaint they eventually filed in common pleas court, plaintiffs alleged defendants had "defaulted under the terms of the Purchase Agreement, the Notes, the Guaranty Indemnification, the Equipment Leases, and the Real Estate Lease (collectively, the 'Obligations') by failing to make payments when due." (Compl. at ¶ 14.) Plaintiffs stated that Mr. Pack failed to remove Mr. Peterson and Mr. Patnode from their personal guaranties of Peterson Trucking's lease agreements with third party lessors, which resulted in Mr. Peterson and Mr. Patnode owing a deficiency under their lease guaranties. Mr. Peterson and Mr. Patnode alleged they were able to settle their lease guaranty claims for $188,512.48 after they incurred over $7,439 in legal fees. Plaintiffs also alleged the vehicles leased by Peterson Trucking sustained damage in the amount of $10,909.33, MP incurred over $20,000 in truck and trailer general maintenance costs, and Peterson Trucking owed MP over $19,000 related to past due payments under the Equipment Lease and Real Estate Lease. Plaintiffs sought judgment against defendants for: (1) $485,000 plus continuing costs and attorney fees against Rush Creek, pursuant to the terms of the Rush Creek Note; (2) $40,518.01 plus continuing interest, costs, and attorney fees against Peterson Trucking, pursuant to the terms of the Peterson Trucking Note; (3) $188,512.48 plus $7,439 in attorney fees against Mr. Pack, pursuant to the terms of the Guaranty Indemnification; (4) $51,746.47 plus continuing costs and attorney fees against Peterson Trucking, pursuant to the terms of the Equipment Lease and Real Estate Lease.

{¶ 10} On December 14, 2018, Mr. Pack filed a pro se answer and counterclaim. In his counterclaim, Mr. Pack alleged plaintiffs breached section 2.8 of the Purchase Agreement because, at the time they executed the agreement, they knew Peterson Trucking's "General Manager Travis Stewart planned to terminate his employment with Peterson Trucking." (Countercl. at ¶ 21.) Mr. Pack stated Mr. Stewart left Peterson Trucking in October of 2016 to work for a competing trucking company and took a significant number of Peterson Trucking's drivers, owner operators, and customer accounts with him when he left.

{¶ 11} On May 14, 2019, plaintiffs moved for summary judgment and asked the court to enter judgment in their favor in the amounts alleged in their complaint. Plaintiffs also asked the court to summarily dismiss Mr. Pack's counterclaim. Plaintiffs claimed they did not breach their representations in section 2.8 of the Purchase Agreement because they had "no knowledge, prior to or during the time the Purchase Agreement was being executed, of any employees intending to terminate their employment with [Peterson Trucking]." (Mot. for Summ. Jgmt. at 7.)

{¶ 12} Plaintiffs supported their motion for summary judgment with affidavits from Mr. Patnode and Mr. Peterson. In his affidavit, Mr. Patnode averred that "[a]t no time while the Purchase Agreement, and all other agreements between Plaintiffs and Defendants were being negotiated and executed, were any of the Plaintiffs advised that any employees, including Travis Stewart, of [Peterson Trucking] were considering ending their employment with [Peterson Trucking]." (*Id.*, attached Ex. A, Patnode Aff. at ¶ 31.) In his affidavit, Mr. Peterson averred that he "personally had no knowledge, at any time when the Purchase Agreement or any other agreements were being negotiated with Rush Creek, of any employees of [Peterson Trucking], including Travis Stewart, were considering ending their employment with [Peterson Trucking]." (*Id.*, attached Ex. B, Peterson Aff. at ¶ 3.) Mr. Peterson further stated he was not "aware of any actions by any employees, before and during the negotiations of the Purchase Agreement and related agreements, which would indicate an intention by any employee to end their employment with [Peterson Trucking] and work for a competitor." (*Id.* at ¶ 3.)

{¶ 13} On May 28, 2019, Mr. Pack filed his memorandum contra plaintiffs' motion for summary judgment. Mr. Pack supported his memorandum contra with his own

affidavit. In his affidavit, Mr. Pack explained that, prior to the parties' execution of the Purchase Agreement on August 25, 2016, neither Mr. Peterson nor Mr. Patnode indicated to Mr. Pack that Mr. Stewart "was disgruntled and had desired to leave the company." (Resp. to Pl.'s Mot. for Summ. Jgmt., attached Ex. 1, Pack Aff. at ¶ 11.) However, after the sale closed, Mr. Peterson "called [Mr. Pack] on the phone and stated * * * 'that [he] talked Travis off the ledge this morning.' " (*Id*. at ¶ 12.) Mr. Pack further stated it was "during that phone conversation that Chad Peterson finally disclosed * * * that not only did he have to talk Stewart out of quitting on that day but he had to talk Stewart out of quitting on several occasion[]s during the summer." (*Id*. at ¶ 13.) Mr. Pack claimed Peterson Trucking failed as a "direct result" of Mr. Stewart leaving the company and taking Peterson Trucking's drivers, owner operators, and top customer accounts with him. (*Id*. at ¶ 19.)

{¶ 14} On June 5, 2019, plaintiffs filed a reply to Mr. Pack's memorandum contra. Plaintiffs asserted Mr. Pack's uncorroborated affidavit "consist[ed] almost entirely of inadmissible hearsay statements." (Pls.' Reply at 2, 6.)

{¶ 15} On September 10, 2019, Mr. Pack informed the court the case was subject to an automatic stay because he had filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. The trial court stayed the case. On November 7, 2023, plaintiffs moved the court to reactivate the case because the bankruptcy case had concluded. The trial court granted plaintiffs' motion and returned the case to the court's active docket on December 7, 2023.

{¶ 16} On December 28, 2023, the court issued a decision granting plaintiffs' motion for summary judgment. The court found Mr. Peterson's affidavit, Mr. Patnode's affidavit, and the various agreements attached to plaintiffs' complaint to be "Civ.R. 56 materials that establish the necessary elements for summary judgment as to [plaintiffs'] claim and Pack's counterclaim." (Decision at 7.) The court acknowledged Mr. Pack's affidavit, but relied on *Owens v. Bridgestone Ams., Inc.*, 10th Dist. No. 19AP-608, 2020-Ohio-5156, ¶ 14 to conclude that "[a] non-movant's own self-serving affidavit cannot defeat a well-supported motion for summary judgment when not corroborated by any outside evidence." (Decision at 7.) Because Mr. Pack failed to "provide any outside evidence to corroborate the assertions made in [his] affidavit," the court concluded Mr. Pack failed to establish a genuine issue of material fact for trial. (Decision at 7.)

{¶ 17} On January 11, 2024, the court issued an entry granting judgment in plaintiffs' favor as follows:

> (1) Against Defendant Rush Creek Logistics, LLC to MP Equipment Leasing, Inc., the amount of $485,000 as of May 11, 2018, plus continuing costs and attorneys' fees, and interest at the statutory rate of 5% from the date of judgment.
>
> (2) Against Defendant Peterson Trucking, LLC to Chad M. Peterson, the amount of $40,518.01 as of May 11, 2018, plus pre-judgment interest of $11,346.99 as of January 5, 2024, calculated at 4.95% per annum under the Promissory Note made by Defendant Peterson Trucking, LLC to Chad M. Peterson for a total judgment amount of $51,865.00, plus costs and attorneys' fees, and post-judgment interest at the statutory rate of 5% from the date of judgment[.]
>
> (3) Against Defendant James M. Pack to Chad M. Peterson and Curtis Patnode, the amount of $195,951.48 as of May 11, 2018, plus continuing costs and attorneys' fees, and interest at the statutory rate of 5% from the date of judgment.
>
> (4) Against Defendant Peterson Trucking, LLC to MP Equipment Leasing, Inc., the amount of $51,746.47, as of May 11, 2018, plus continuing costs and attorneys' fees, and interest at the statutory rate of 5% from the date of judgment.

## II. Assignment of Error

{¶ 18} Mr. Pack appeals, assigning the following error for our review:

> The Trial Court erred when it granted the Plaintiff[s'] Motion for Summary Judgment and Dismissed the [Defendant's] Counterclaim.

## III. Discussion

{¶ 19} Mr. Pack's sole assignment of error asserts the trial court erred by granting plaintiffs' motion for summary judgment and dismissing his counterclaim. Mr. Pack acknowledges the present appeal concerns only the trial court's order pertaining to him as an individual; he does not seek relief for the company defendants. (Appellant's Brief at 7.)

{¶ 20} An appellate court reviews a grant of summary judgment under a de novo standard. *Capella III, LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo

appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 21} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment. *Id.* If the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991). Because summary judgment is a procedural device used to terminate litigation, it must be awarded with caution and all doubts must be resolved in favor of the nonmoving party. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 22} To establish a cause of action for breach of contract, a plaintiff must prove (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach. *Swift Transp. Co. v. Williams*, 10th Dist. No. 17AP-555, 2018-Ohio-718, ¶ 12, citing *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 41. *Accord Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.) "A defendant breaches a contract when it fails, without legal excuse, to perform a promise that forms the whole or part of the contract." *JDS So Cal, Ltd. v. Ohio Dept. of Natural Resources*, 10th Dist. No. 16AP-665, 2018-Ohio-1159, ¶ 37, citing *Natl. City Bank v. Erskine & Sons, Inc.*, 158 Ohio St. 450 (1953), paragraph one of the syllabus.

{¶ 23} Mr. Pack contends his affidavit established a genuine issue of material fact as to breach of the agreement because it demonstrated Mr. Peterson knew Mr. "Stewart had wanted to leave the company before the company was sold." (Appellant's Brief at 8.) The trial court relied on *Owens* to reject Mr. Pack's affidavit. In *Owens*, the court relied on *White v. Sears, Roebuck & Co.*, 10th Dist. No. 10AP-294, 2011-Ohio-204, to state that "a nonmovant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence." *Owens*, 2020-Ohio-5156 at ¶ 14, citing *White* at ¶ 7.

{¶ 24} But, we recently overruled prior decisions from this court, including *White*, to the extent they held that "a nonmoving party may never demonstrate the existence of a genuine issue of material fact with 'self[-]serving testimonial evidence alone." *Kiser v. United Dairy Farmers*, 10th Dist. No. 22AP-539, 2023-Ohio-2136, ¶ 24. In so doing, we explained:

> *White* has been used in decisions of this court to say a nonmovant's own uncorroborated, self-serving assertions, whether made in an affidavit, deposition, or interrogatory responses, cannot defeat a well-supported summary judgment motion. *See, e.g.*, [*Pankey v. Ohio State Hwy. Patrol*, 10th Dist. No. 20AP-234, 2021-Ohio-1317, ¶ 9 ("Additionally, a nonmovant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence")]; [*Kean v. Cincinnati Ins. Co.*, 10th Dist. No. 20AP-177, 2021-Ohio-490, ¶ 11 ("Additionally, a nonmovant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence")]. This principle imposes several requirements beyond those contained in Civ.R. 56. Civ.R. 56(C) and (E) do not impose heightened standards for evidence produced by the nonmoving party. The rule does not require either party to corroborate competent testimonial evidence made on personal knowledge. It does not prohibit either party from submitting "self-serving" evidence that conforms with the rule. And, as we see in the proceedings below, this principal has led to trial courts excluding otherwise valid evidence that would create a genuine dispute of material fact at summary judgment. For example, we recently reversed the court of claims on summary judgment after it relied on this mistaken interpretation of *White* to discount a nonmoving party's statements as "self-serving" and thus "not worthy of belief." *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 27.

*Kiser* at ¶ 23

{¶ 25} As such, we "reaffirm[ed] that 'self-serving' testimonial evidence that conforms to the requirements of Civ.R. 56(C) must be considered by the trial court and treated as any other evidence in the record at summary judgment." *Id*. at ¶ 24.

{¶ 26} In the present case, the trial court's mistaken reliance on *Owens* resulted in the court summarily rejecting Mr. Pack's affidavit. Mr. Pack explained in his affidavit that, after the transaction closed, Mr. Peterson called him on the phone and informed him he had "to talk Stewart out of quitting *on several occasion*[]*s during the summer*" of 2016. (Emphasis added.) (Resp. to Pl.'s Mot. for Summ. Jgmt., attached Ex. 1, Pack Aff. at ¶ 13.) But, MP had represented and warranted in section 2.8 of the Purchase Agreement that, as of the August 25, 2016 closing date, "[t]o the best knowledge of MP[], * * * no employee or manager or officer has any plans to terminate employment with [Peterson Trucking]." (Purchase Agreement at section 2.8.) Therefore, if true, Mr. Pack's affidavit would establish plaintiffs breached that term of the Agreement.

{¶ 27} Civ.R. 56(C) specifically permits the use of affidavits to support or oppose summary judgment. Civ.R. 56(E) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Although Mr. Pack's affidavit repeats statements allegedly made by Mr. Peterson, Evid.R. 801(D)(2) provides that an admission by a party opponent is not hearsay and would therefore be admissible evidence. *See Cordle v. Bravo Dev., Inc.*, 10th Dist. No. 06AP-256, 2006-Ohio-5693, ¶ 13, citing Evid.R. 801 and 801(D)(2) (noting that "[a] statement by someone other than the declarant, offered to prove the truth of the matter asserted is hearsay," but "[a]n admission of a party opponent" is an exception to hearsay); Evid.R. 801(D)(2)(a) (a statement is not hearsay if it is offered against the party and is "the party's own statement, in either an individual or a representative capacity"). Mr. Peterson was a plaintiff in the present case, and Mr. Pack's affidavit reiterated statements Mr. Peterson made in both his personal capacity and his capacity as an officer of MP. *See Jelinek v. Abbott Laboratories*, 10th Dist. No. 11AP-996, 2013-Ohio-1675, ¶ 25 (finding the

trial court erred under Evid.R. 801(D)(2)(a) by excluding a statement made by a company's vice president who was a party opponent).

**{¶ 28}** Thus, Mr. Pack's averments concerning Mr. Peterson's statements would be admissible in evidence. Moreover, the facts as presently developed demonstrate Mr. Pack was in the best position to offer testimony concerning the admissions Mr. Peterson made in a conversation occurring solely between the two men. *See Bell v. Beightler*, 10th Dist. No. 02AP-569, 2003-Ohio-88, ¶ 34 (noting "there may be aspects to the facts of any given case upon which the nonmoving party may be uniquely qualified to offer testimony"); *Crockett Homes, Inc. v. Tracy*, 7th Dist. No. 23 CA 0966, 2024-Ohio-1464, ¶ 115 (noting "[a] party may be in the best position to offer testimony in support of her cause"); *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 303-04 (1996).

**{¶ 29}** In their affidavits, Mr. Peterson and Mr. Patnode averred that, at the time the parties executed the Purchase Agreement, they had no knowledge that Mr. Stewart, or any other Peterson Trucking employee, was considering ending employment with Peterson Trucking. Accordingly, the affidavits of Mr. Pack, Mr. Peterson, and Mr. Patnode arguably conflicted regarding whether the officers of MP knew Mr. Stewart planned to terminate his employment with Peterson Trucking during the relevant time frame. "When the evidence offered allows conflicting inferences, the court reviewing a summary judgment motion may not weigh the evidence." *DN Reynoldsburg, LLC v. Maurices Inc.*, 10th Dist. No. 20AP-57, 2022-Ohio-949, ¶ 17, citing *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 20. "At summary judgment, it is not the role of the court to resolve a disputed fact or weigh the credibility of the evidence, only to determine whether there exists a genuine dispute of material fact." *Kiser*, 2023-Ohio-2136 at ¶ 16. *See also Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993) (holding that credibility issues arise in summary judgment proceedings "when one litigant's statement conflicts with another litigant's statement over a fact to be proved" and that "summary judgment in such a case is inappropriate").

**{¶ 30}** Pursuant to *Kiser*, "self-serving" and uncorroborated attestations that conform to the requirements of Civ.R. 56(C) must be considered by the trial court. Because the trial court failed to even consider whether Mr. Pack's affidavit created a genuine issue

of material fact, the court erred by granting plaintiffs' motion for summary judgment. We therefore sustain Mr. Pack's sole assignment of error.

## IV. Conclusion

{¶ 31} Having sustained Mr. Pack's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed; cause remanded.*

MENTEL, P.J. and DORRIAN, J., concur.

_____