[Cite as *Whitney Woods Homeowners' Assn., Inc. v. Steagall*, 2025-Ohio-2784.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Whitney Woods Homeowners' Association, Inc., | : | |
| | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | No. 24AP-583 (C.P.C. No. 22CV-957) |
| v. | : | (REGULAR CALENDAR) |
| Kenneth Steagall et al., | : | |
| Defendants-Appellants/ Cross-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on August 7, 2025

**On brief:** *Williams & Strohm, LLC, Brad J. Terman, Robin L. Strohm, Nicholas R. Barnes*, and *Jesse M. Kanitz*, for plaintiff-appellee/cross-appellant. **Argued:** *Brad J. Terman.*

**On brief:** *Kohl & Cook, Jacob R. Dattilo, Andrew J. Gerling*, and *Sean M. Kohl*, for defendants-appellants/cross-appellees. **Argued:** *Jacob R. Dattilo.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendants-appellants/cross-appellees, Kenneth Steagall and Benita Hardy Steagall ("the Steagalls"), appeal from a judgment of the Franklin County Court of Common Pleas granting in part and denying in part a motion for summary judgment filed by plaintiff-appellee/cross-appellant, Whitney Woods Homeowners' Association, Inc. ("the Association"). The Association also has filed a cross-appeal from that judgment. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}   The Association is the homeowners' association for the Whitney Woods residential subdivision ("Whitney Woods") in Columbus, Ohio.  The lots in Whitney Woods are subject to the Declaration of Covenants, Easements, Conditions and Restrictions of Whitney Woods Subdivision ("the Declaration") originally adopted in June 2004.  The Steagalls own a home in Whitney Woods that they purchased in 2010.

{¶ 3}   The Association asserts that beginning in or around 2019, the Steagalls violated certain restrictions set forth in the Declaration by displaying unapproved signs, installing new improvements or modifying existing improvements without prior written approval, and openly storing building materials or trash on their lot.  The Association claims it attempted to informally resolve the alleged violations but that the Steagalls refused to comply.[1]  The Association sent letters to the Steagalls on November 3, 2020, January 29, 2021, and March 16, 2021, notifying them of violations of the Declaration and requesting that they comply with the Declaration.  The Association began to impose fines of $125 per week on the Steagalls' lot for alleged noncompliance with the Declaration after the March 16, 2021 letter was issued.

{¶ 4}   On March 22, 2021, the United States Department of Housing and Urban Development notified the Association that the Steagalls had filed a complaint alleging racial discrimination ("the HUD claim").  In the HUD claim, the Steagalls, who are Black, asserted that the Association ignored violations of restrictions contained in the Declaration by White residents but immediately contacted the Steagalls about any alleged violation on their lot. The Steagalls also alleged that the Association ignored their requests to address issues with certain neighbors, including a neighbor who sprayed chemicals into their yard that killed the grass and another neighbor whose dogs trespassed into the Steagalls' yard and attacked them.  The Steagalls further alleged that they were the only family that was sent a letter regarding approval requirements for property improvements.

---

[1] In a letter dated November 3, 2020, the Association addressed the Steagalls' "wall that has been constructed to the east of your patio [which] was not approved and does not comply with the Deed Restrictions." (Pl.'s Ex. C at 1, attached to Compl.) The Association stated "[t]he Board would be inclined to approve the wall retroactively, but an application for approval must still be submitted. Please submit an email with details about the wall as soon as possible so that compliance with the Deed Restrictions can be ensured." (Ex. C at 1.)

{¶ 5}  The Association incurred attorney fees and costs in responding to the HUD claim and subsequent investigation.  In June 2021, the members of the Association approved a special assessment of $500 against each lot in Whitney Woods to pay the attorney fees accrued in responding to the HUD claim.  In July 2021, the Steagalls notified the Association they would not pay the special assessment for attorney fees.  In December 2021, the HUD claim was dismissed for lack of reasonable cause.[2]

{¶ 6}  The Association alleges that while the HUD claim was pending the Steagalls made additional modifications to their lot without requesting or receiving approval.  On January 10, 2022, the Association issued a letter to the Steagalls requesting that they comply with the Declaration by submitting a request for approval for each completed or intended modification to their lot.  On January 12, 2022, the Association issued a letter to the Steagalls notifying them that fines had been imposed for violating the Declaration and that the special assessment for legal fees remained unpaid.  The Steagalls responded with letters issued on January 17, 2022, asserting that they were not in violation of the Declaration and would not pay any fines or the special assessment.

{¶ 7}  In February 2022, the Association filed a complaint in the Franklin County Court of Common Pleas for declaratory judgment, permanent injunction, and monetary damages.  The Association sought a declaratory judgment that the Steagalls were in violation of the Declaration, that the fines levied against the Steagalls' lot for violations of the Declaration were properly chargeable to the Steagalls and their lot, that the Steagalls were obligated to pay the special assessment for legal fees, and that the costs and attorney fees incurred by the Association related to the HUD claim were properly chargeable to the Steagalls and their lot.  The Association also sought an injunction ordering the Steagalls to stop violating the Declaration and bring their lot into compliance by removing all violations, and authorizing the Association to enter the Steagalls' lot to remove or correct any violation.  The Association requested a monetary judgment against the Steagalls for all expenses

---

[2] HUD found that the Steagalls had not satisfied the elements to show a violation of Section 804(b) of the Act and found in particular that its investigation "shows that Respondents had a legitimate, nondiscriminatory reason to issue violation notices to Complainant and assess related fees for his unauthorized improvement project that he completed without obtaining Respondents' approval. Furthermore, the evidence shows that Respondents had a history of approving and dis[ap]proving improvement projects requested by homeowners in accordance with the bylaws regardless of race." (Pl.'s Ex. I at 7, attached to Compl.) HUD also noted that "the current president of the homeowners' association, Respondent Willey, is African American and that Complainant served as the association president for a number of years." (Ex. I at 8.)

incurred related to the action, including court costs and attorney fees. The Steagalls filed an answer to the complaint denying the Association's claims and asserting various defenses.

{¶ 8} The Association moved for summary judgment, asserting it was entitled to judgment as a matter of law on all its claims. In support of the motion for summary judgment, the Association submitted an affidavit from Cindy Dawson, the property manager for the Association ("the Dawson Affidavit"). The Steagalls filed a memorandum in opposition to summary judgment, supported by an affidavit from Kenneth Steagall ("the Steagall Affidavit").

{¶ 9} The trial court granted in part and denied in part the Association's motion for summary judgment, stating that it had carefully reviewed the evidence submitted, the arguments of counsel, and the relevant law. The court summarized the allegations in the complaint and the relevant sections of the Declaration, while acknowledging that "Defendants dispute any violations of the Declaration" and that the "Defendants claim that the Association has waived any right to enforce the terms of the Declaration directing the Court to other lots in the subdivision with improvements that Defendants allege were not approved by the Association." (Mar. 11, 2024 Decision & Entry at 5.) The court generally concluded that "the Association has met the three prerequisites for a declaratory judgment action. There is no question of fact that an actual justiciable controversy exists between the Association and Defendants regarding the application and interpretation of the Declaration. The Court further finds that immediate relief is necessary for the preservation of the parties' rights as Lot Assessments against the Lot continue to accrue." (Decision & Entry at 7-8.) In its judgment entry, the court ordered, adjudged, and decreed that (1) the Association did not waive its right to enforce the terms of the Declaration; (2) the Steagalls violated the Declaration when they installed a patio, installed landscaping/boundary wall and replaced trees "without prior approval of the Association"; (3) the Steagalls violated the Declaration when they maintained a "No Trespassing" sign on their lot; and (4) the Steagalls violated the Declaration when they failed to deposit trash and/or construction debris in covered, sanitary containers, screened from view. (Decision & Entry at 11.) The court did not, however, specifically address any of the averments in the Steagall Affidavit, and it did not include any analysis to support its conclusion to grant in part the Association's motion for summary judgment.

{¶ 10} Nevertheless, in making the general judgment that the Steagalls violated restrictions contained in the Declaration, the court implicitly found there was no genuine issue of material fact that the Steagalls violated the Declaration by installing a patio, a landscaping/boundary wall, and replacing trees on their lot without prior approval from the Association, by maintaining a "No Trespassing" sign on their lot, and by failing to deposit trash and/or construction debris in covered containers screened from view.

{¶ 11} The court ordered the Steagalls to bring their lot into compliance within 45 days and authorized the Association to enter onto the Steagalls' lot to cure any remaining violations after 45 days. The court also ruled that the Association was entitled to impose the June 2021 special assessment of $500 against the Steagalls' lot as their proportional share of the costs and attorney fees expended in relation to the HUD claim. The court further ruled that the Association was not entitled to assess any other portion of the costs and attorney fees expended in relation to the HUD claim against the Steagalls' lot, concluding that the allegations raised in the HUD claim related to discrimination rather than enforcement of the Declaration. The court held that the weekly fines levied against the Steagalls' lot for violating the Declaration were not properly chargeable against the Steagalls or their lot because the Association failed to provide the Steagalls with an opportunity to be heard regarding the fines. The court concluded that genuine issues of material fact remained as to the amount and reasonableness of attorney fees incurred by the Association for bringing the action to enforce the Declaration and ordered the case to proceed to trial on that issue.

{¶ 12} The parties submitted a stipulation as to the reasonableness of the Association's attorney fees and, based on that stipulation, a magistrate of the trial court issued a decision awarding the Association $10,694 in attorney fees and $239 in costs. No objections were filed to the magistrate's decision and the trial court adopted it.[3]

---

[3] In March 2023, the Steagalls filed a complaint against the Association in the Franklin County Court of Common Pleas, alleging violations of the deed restrictions and the Ohio Planned Community Act. The Steagalls later moved to consolidate that case with the present case. The trial court granted the Steagalls' motion and consolidated the two cases. Neither the summary judgment decision nor the trial court decision adopting the magistrate's decision and awarding monetary judgment to the Association address the claims asserted in the Steagalls' complaint. However, in the decision adopting the magistrate's decision and awarding monetary judgment to the Association, the trial court found that there was no just cause for delay. *See* Civ.R. 54(B) ("When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple

## II. Assignments of Error

{¶ 13} The Steagalls appeal and assign the following three assignments of error for our review:

> [I.] The trial court erred by holding that Plaintiff-Appellee did not waive its right to enforce the Deed Restrictions despite the applicable caselaw.
>
> [II.] The trial court erred by holding that Plaintiff-Appellee is entitled to declaratory relief without analysis of the evidence before it.
>
> [III.] The trial court erred by holding that Plaintiff-Appellee is entitled to a permanent injunction without the need to prove the usual elements of an injunction and by holding that Plaintiff-Appellee is entitled to a permanent injunction without analysis of the evidence before it.

{¶ 14} The Association cross-appeals and assigns the following sole assignment of error for our review:

> I. The trial court erred by holding that Plaintiff-Appellee is not entitled to assess its costs, including attorneys fees, related to its defense of Defendants-Appellants' administrative complaint alleging discrimination.

## III. Discussion

### A. Standard of review

{¶ 15} We review de novo a trial court's summary judgment decision, conducting an independent review without deference to the trial court's decision. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 2019-Ohio-4015, ¶ 6 (10th Dist.). Summary judgment is appropriate when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 2010-Ohio-4505, ¶ 29. In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio* at ¶ 6.

---

parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.").

{¶ 16} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 1996-Ohio-107, ¶ 18. If the moving party fails to satisfy that initial burden, the court must deny the motion for summary judgment. If the moving party satisfies the initial burden, summary judgment is appropriate unless the non-moving party responds with specific facts demonstrating that a genuine issue of material fact exists for trial. *Id.* Evidence permitted in support of a motion for summary judgment under Civ.R. 56(C) is limited to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. *Kiser v. United Dairy Farmers*, 2023-Ohio-2136, ¶ 14 (10th Dist.) Under Civ.R. 56(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

{¶ 17} In this case, the Association submitted the Dawson Affidavit in support of its motion for summary judgment, and the Steagalls submitted the Steagall Affidavit in opposition to summary judgment. This court recently clarified its position regarding "self-serving" affidavits filed by a non-moving party, holding that " 'self-serving' testimonial evidence that conforms to the requirements of Civ.R. 56(C) must be considered by the trial court and treated as any other evidence in the record at summary judgment." *Kiser* at ¶ 24. *See MP Equip. Leasing, Inc. v. Pack*, 2024-Ohio-5495, ¶ 30 (10th Dist.) ("Pursuant to *Kiser*, 'self-serving' and uncorroborated attestations that conform to the requirements of Civ.R. 56(C) must be considered by the trial court.").

## B. Restrictive covenants imposing limitations on use of property

{¶ 18} This appeal primarily involves the Association's claims that the Steagalls have violated restrictive covenants contained in the Declaration. Generally, restrictive covenants limiting the use of land are not favored and are to be construed strictly against the restriction and in favor of free use of land. *See Driscoll v. Austintown Assocs.*, 42 Ohio St.2d 263, 276 (1975) ("Our legal system does not favor restrictions on the use of property."); *Nutis v. Schottenstein Trustees*, 41 Ohio App.3d 63, 65 (10th Dist. 1987) ("Restrictive covenants are to be construed strictly against the restriction and in favor of

the free use of land."). Notwithstanding the general disfavor of restrictive covenants, however, the Supreme Court of Ohio has held that "[w]here an owner of land has adopted a general building scheme or plan for the development of a tract of property, designed to make it more attractive for residential purposes by reason of certain restrictive agreements to be imposed upon each of the separate lots sold, embodying the same in each deed, such agreements will generally be upheld, provided the same are not against public policy." *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56 (1929), paragraph one of the syllabus. *See Berger v. Van Sweringen Co.*, 6 Ohio St.2d 100, 103 (1966) ("If land is developed according to a uniform general plan and the intent so to develop such land is shown, reasonable restrictive covenants may be enforced."). Accordingly, Ohio courts have upheld reasonable restrictions in planned communities. *See, e.g.*, *Stars of Cleveland, Inc. v. D&L Ferguson, L.L.C.*, 2016-Ohio-4625, ¶ 32 (5th Dist.) ("A plan designed to maintain harmony and aesthetic balance of a community will often be upheld where the restrictions are reasonable."); *Garvin v. Cull*, 2006-Ohio-5166, ¶ 21 (11th Dist.) ("Plans which are dedicated to maintaining the harmony and aesthetic quality of a community have been upheld when they are reasonably exercised."). Courts apply the ordinary rules of contract construction when interpreting a restrictive covenant and the primary objective is to determine the parties' intent as reflected in the language used in the restriction. *Capital City Community Urban Redevelopment Corp. v. Columbus*, 2016-Ohio-8266, ¶ 23 (10th Dist.).

{¶ 19} The Association alleged the Steagalls violated the following restrictions contained in the Declaration in the following ways:

- Article IV, Section D of the Declaration, which prohibits an owner from displaying any signs on his property except for specified marketing or identification signs ("the signage restriction"), by erecting and maintaining signs on their lot without approval of the Association;

- Article IV, Section F of the Declaration, which prohibits an owner from creating or maintaining a nuisance or allowing a condition to exist on their lot that unreasonably disturbs or interferes with the quiet occupancy of another lot owner ("the nuisance restriction"), by maintaining or creating a nuisance on their lot;

- Article IV, Section H of the Declaration, which prohibits open storage upon any lot, and Article IV, Section K of the

Declaration, which prohibits storage of trash of any kind on a
lot and provides that all trash must be deposited in covered
sanitary containers that are screened from view ("the storage
restrictions"), by openly storing construction materials or trash
on their lot;

- Article IV, Section R of the Declaration, which prohibits the
installation of any fence or wall on any lot without prior
approval of the Association ("the fence restriction"), by
installing landscaping or retaining walls on the edges of their
lot;

- Article V, Section B of the Declaration, which provides that no
owner shall construct any improvement on their lot without
prior written approval of the Association ("the preapproval
restriction"), by installing a patio, installing landscaping or
retaining walls, and modifying landscaping, including
installation of trees or bushes along their property line and
installing a draining system, without prior written approval of
the Association.[4]

{¶ 20} In its decision granting the Association's motion for summary judgment, the

trial court ruled that the Steagalls violated the signage restriction by maintaining a "No

Trespassing" sign on their lot, violated the storage restrictions by failing to deposit trash or

construction debris in covered, sanitary containers that were screened from view, and

violated the preapproval restriction by installing a patio, installing boundary walls, and

replacing dead trees on their lot without prior approval from the Association.[5]

**C. The Steagalls' claim that the Association waived the restrictions**

{¶ 21} The Steagalls assert in their first assignment of error that the trial court erred

by concluding the Association had not waived its right to enforce the restrictions contained

in the Declaration. The Steagalls argue the Association waived its right to enforce the

---

[4] Although not specifically cited in the Association's complaint, we note that Article IV, Section A of the Declaration sets forth a similar general restriction on unauthorized improvements, providing that "[n]o improvements may be constructed on any Lot until and unless the plans and the builder therefore have been approved in writing by the Design Review Board (or Developer if no Design Review Board has been established) as provided for hereinafter." (Declaration at 6, attached as Pl.'s Ex. B to Compl.)

[5] The trial court specifically cited Article IV, Section A of the Declaration. As noted above, that provision sets forth a general restriction on unauthorized improvements that is similar to the provisions of Article V, Section B of the Declaration.

restrictions by acting inconsistently with that right and by acquiescing to violations of the restrictions by other lot owners.

{¶ 22} In support of their waiver argument, the Steagalls cite the Steagall Affidavit, in which Kenneth Steagall averred that he had previously served as president of the Association and that during his tenure no resident submitted a request for prior approval of improvements. Steagall further asserted that other owners in Whitney Woods made specific modifications or improvements to their lots without prior approval from the Association. The Association argues it did not waive its right to enforce the restrictions, asserting the Steagalls failed to present admissible evidence to establish waiver. The Association further argues that even if the alleged instances of acquiescence claimed in the Steagall Affidavit are accurate, they would not result in waiver of its right to enforce the restrictions.

{¶ 23} "[W]aiver is a voluntary relinquishment of a known right." *State ex rel. Ryan v. State Teachers Retirement Sys.*, 71 Ohio St.3d 362, 368 (1994). *See White Co. v. Canton Transp. Co.*, 131 Ohio St. 190 (1936), paragraph one of the syllabus. ("Waiver as applied to contracts is a voluntary relinquishment of a known right."). The party asserting existence of a waiver bears the burden of proving it. *White Co.* at paragraph four of the syllabus; *CosmetiCredit, L.L.C. v. World Fin. Network Natl. Bank*, 2014-Ohio-5301, ¶ 29 (10th Dist.). With respect to restrictive covenants, Ohio courts have held that "[i]n determining whether a waiver or abandonment of a deed restriction has occurred, 'the test is whether, under the circumstances, there is still a substantial value in such restriction, which is to be protected; and where there is a substantial value to the dominant estate remaining to be protected, equity will enforce a restrictive covenant.' " *DeRosa v. Parker*, 2011-Ohio-6024, ¶ 44, (7th Dist.), quoting *Romig v. Modest*, 102 Ohio App. 225 (2d Dist. 1956), paragraph three of the syllabus. *See Stars of Cleveland*, 2016-Ohio-4625, at ¶ 28 (5th Dist.) ("Restrictive covenants become unenforceable in Ohio when there is a waiver or abandonment of the restrictions because the nature of the neighborhood or community has so changed that the restriction no longer has substantial value."); *Landen Farm Community Servs. Assn., Inc. v. Schube*, 78 Ohio App.3d 231, 235-36 (12th Dist. 1992) ("In essence, if the nature of a neighborhood or community has so changed that the restriction

has become valueless to the owners of the property, a court will not, in the exercise of its discretion, enforce the restrictive covenant.").

{¶ 24} In *Landen Farm*, the homeowners' association of a large residential community sued two individual homeowners seeking declaratory judgment that freestanding basketball hoops installed at the edges of the homeowners' driveways violated the community's design and use standards. *Landen Farm* at 232. The trial court concluded in relevant part that the restrictive covenant that limited freestanding basketball hoops had been waived and abandoned, concluding that freestanding basketball hoops had been integrated into the community and that the character of the neighborhood had changed. *Id*. at 235. On appeal, the individual homeowners argued that the association had acquiesced and waived any restriction because at least 50 of the 2,000 homeowners in the community had installed freestanding basketball hoops on their lots without being challenged by the association. *Id*. The appellate court noted that the apparent purpose of the restrictive covenant was to preserve the aesthetics of the streetscape and homeowners' properties but concluded that evidence of numerous alleged violations by other homeowners established that freestanding basketball hoops had been integrated into the community and that the character of the neighborhood had been "substantially altered so as to render the restriction valueless to the other homeowners." *Id*. at 236. Therefore, the court concluded that the homeowners' association had waived its right to enforce the restrictive covenant. *Id*.

{¶ 25} By contrast, in *DeRosa,* a homeowner challenged a restrictive covenant prohibiting storage of house trailers on a residential lot and the appellate court found that evidence of a single similar violation in the past did not establish that the character of the residential neighborhood had substantially changed such that the restrictive covenant no longer had substantial value. *DeRosa* at ¶ 46. The court reasoned that evidence that another homeowner had also parked a trailer in his backyard "would not establish that the property owners as a whole abandoned or waived the restriction against keeping house trailers on one's property." *Id*. at ¶ 45. The court concluded that evidence of a single similar violation did not establish that the nature of the neighborhood had changed so substantially that there was no longer any value in maintaining it as a single-family residential area that prohibited house trailers from being stored on any owner's property. *Id*.

{¶ 26} Here, the Declaration states that the restrictions imposed by it are in furtherance of certain purposes, including the preservation, beautification, and maintenance of the lots in the Whitney Woods community. The provisions of the Declaration that the Steagalls are alleged to have violated include specific restrictions, i.e., the signage restriction, storage restrictions, and fence restriction, as well as general restrictions, i.e., the nuisance restriction and the preapproval restriction. For purposes of analysis, we will consider each category separately to determine whether the Steagalls established that the Association waived its right to enforce the restrictions. The Steagalls argue the Steagall Affidavit constitutes evidence establishing waiver of the restrictions; therefore, we must closely examine the assertions contained in the Steagall Affidavit.

### 1. Waiver of specific restrictions imposed by the Declaration

{¶ 27} We begin by considering whether the Steagalls established that the Association waived the specific restrictions they were alleged to have violated, i.e., the signage restriction, storage restrictions, and fence restriction. With respect to the signage restriction, the Steagall Affidavit admitted that the Steagalls installed "No Trespassing" signs on their property. The Steagall Affidavit did not expressly assert that other homeowners in Whitney Woods also displayed signs in violation of the Declaration but included a photograph purporting to show an "Ohio State flag" displayed by another homeowner. (Steagall Aff. at ¶ 37.) Similarly, with respect to the storage restrictions, the Steagall Affidavit asserted that the Steagalls had "never openly stored waste materials on [their] Property other than for a week or less." (Steagall Aff. at ¶ 15.) The Steagall Affidavit further averred that trash had never been in view of the public on the Steagalls' lot. However, the Steagall Affidavit did not assert that any other homeowners in Whitney Woods had violated the prohibition on open storage or trash storage.

{¶ 28} With respect to the fence restriction, the Steagall Affidavit asserted that the Steagalls installed "an edging liner to [their] garden bed" and stated it had been in the same condition since 2017. (Steagall Aff. at ¶ 17.) Notwithstanding this characterization of the wall as being merely a garden edging liner, the photographs attached to the Dawson Affidavit depict a continuous line of bricks or pavers along the edges of the Steagalls' lot appearing to form a border between the Steagalls' lot and the adjacent lots. The Steagall Affidavit refers to one other Whitney Woods homeowner installing a "railroad tie retention

wall" and another homeowner making "improvements to their retention wall" without prior approval from the Association. (Steagall Aff. at ¶ 30, 32.) However, the Steagall Affidavit does not assert that any other homeowner installed a border or boundary wall between lots. Thus, the walls the Steagalls installed differ in kind from the retention walls referred to in the Steagall Affidavit. *See Emerald Estates Homeowners Assn. v. Albert*, 2009-Ohio-6627, ¶ 33 (5th Dist.) (noting that other alleged violations of restrictive covenant prohibiting placement of fences without prior approval were different in nature because they were decorative fences, as compared to a 120-foot long, 6-foot tall wooden fence running the length of a backyard).

{¶ 29} As to the specific restrictions set forth in the Declaration, this case is more like *DeRosa* than *Landen Farm*, because at most the Steagall Affidavit would establish a single violation of the signage restriction by another Whitney Woods homeowner, no violations of the storage restrictions, and no similar violations of the fence restriction. Thus, as in *DeRosa*, the Steagalls have failed to establish that the nature of the Whitney Woods neighborhood has changed so substantially that there was no longer substantial value in the specific prohibitions contained in the restrictions set forth in the Declaration. Therefore, the trial court did not err in concluding that the Association had not waived its right to enforce the specific restrictions that the Steagalls were alleged to have violated.

## 2. Waiver of general restrictions imposed by the Declaration

{¶ 30} We next consider whether the Steagalls established that the Association waived the general restrictions they were alleged to have violated, i.e., the nuisance restriction and the preapproval restriction.

{¶ 31} With respect to the nuisance restriction, the Steagall Affidavit did not expressly allege that other Whitney Woods homeowners maintained nuisances on their properties, but referred to certain actions that could constitute a nuisance or interference with neighboring property. Those actions included alleged trespass onto the Steagalls' property by landscapers or lawn maintenance workers hired by other homeowners and an attack by a neighbor's dog. The Steagall Affidavit also included a photograph purporting to show a neighbor's unappealing or unsafe building. At most the Steagall Affidavit establishes a limited number of possible encroachments onto their property that could constitute a nuisance or interference; therefore, similar to our analysis of the specific

restrictions above, the Steagalls failed to establish that the nature of the Whitney Woods neighborhood has changed so substantially that there was no longer substantial value in the nuisance restriction contained in the Declaration.

{¶ 32} As to the preapproval restriction, the Steagall Affidavit averred that Kenneth Steagall served as president of the Association "for years until 2017," and that no homeowner requested prior approval from the Association before making improvements to their property during that time. (Steagall Aff. at ¶ 3.) The Steagall Affidavit then asserted that since 2019, one neighboring family had installed a front door archway and a French drain system in their yard. That assertion was followed by multiple paragraphs asserting that other homeowners made various improvements to their lots without requesting prior approval from the Association. The Steagall Affidavit did not expressly establish when those improvements were made but they appear to have occurred in 2019 or later.[6] Although the Steagall Affidavit may establish personal knowledge of whether prior approval was required for improvements made during the time that Kenneth Steagall was president of the Association, it fails to establish a basis for personal knowledge as to whether any homeowners requested prior approval from the Association for improvements occurring after 2017. With respect to the specific improvements cited in the Steagall Affidavit, the Steagalls' memorandum in opposition to the Association's motion for summary judgment asserted that Kenneth Steagall "asked these neighbors if they asked the [Association] for permission and was told they did not ask the [Association]." (Memo in Opp. at 7.)

{¶ 33} "Affidavits offered in opposition to summary judgment must be made on personal knowledge, must set forth admissible evidence, and must show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." *U.S. Bank Trust Natl. Assn. v. Williams*, 2022-Ohio-4590, ¶ 34 (10th Dist.). " 'Personal knowledge' is 'knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.' " *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 26, quoting *Black's Law Dictionary* (7th Ed. 1999). Information in affidavits that is not based on personal knowledge and does not fit within a permissible

---

[6] This is further evidenced by the copies of emails attached to the Steagall Affidavit. These emails are purportedly from other Whitney Woods homeowners sent to management and other homeowners of property improvements or maintenance being completed on their property. The emails are dated 2022, 2021, 2020.

exception to the hearsay rule may be properly disregarded by the trial court when ruling on a motion for summary judgment. *Williams* at ¶ 34. *See Guernsey Bank v. Milano Sports Ents., L.L.C.*, 2008-Ohio-2420, ¶ 59 (10th Dist.), quoting *Paulino v. McCary*, 2005-Ohio-5920, ¶ 6, fn. 1 (10th Dist.) (" 'Hearsay statements, unless an exception to the hearsay rule, are not admissible evidence in a summary judgment context.' "). Statements from the Steagalls' neighbors to Kenneth Steagall about whether the neighbors sought prior approval from the Association would be hearsay and therefore any assertions in the Steagall Affidavit based on the neighbors' statements would not be within Kenneth Steagall's personal knowledge.[7] If the hearsay material is set aside, the remainder of the Steagall Affidavit fails to establish that any other Whitney Woods homeowners violated the preapproval restriction. Because they did not establish any violations of the preapproval restriction by other Whitney Woods homeowners, the Steagalls failed to establish that the nature of the Whitney Woods neighborhood has changed so substantially that there was no longer substantial value in the preapproval restriction contained in the Declaration.

{¶ 34} We conclude the Steagalls failed to demonstrate that the Association waived its right to enforce the restrictions contained in the Declaration; therefore, the trial court did not err by holding that the Association had not waived its right to enforce the restrictions. Accordingly, we overrule the Steagalls' first assignment of error.

### D. The Steagalls' claim that the trial court erred by granting declaratory judgment for the Association

{¶ 35} In their second assignment of error, the Steagalls assert the trial court erred by granting declaratory judgment for the Association and failed to analyze the evidence

---

[7] The Steagalls assert for the first time in their reply brief that the statements by their neighbors were not hearsay because they were admissions by party opponents. In relevant part, Evid.R. 801(D)(2) provides that a statement is not hearsay if it is offered against a party and is "the party's own statement, in either an individual or a representative capacity." The Steagalls argue that all Whitney Woods homeowners are members of the Association and, therefore, statements by their neighbors constitute admissions by a party opponent. "The purpose of a reply brief is to afford the appellant an opportunity to respond to the brief of the appellee, not to raise a new argument for the first time." *Cullinan v. Ohio Dept. of Job & Family Servs.*, 2016-Ohio-1083, ¶ 19 (10th Dist.). "Therefore, we generally will not address an argument raised for the first time in a reply brief." *Id.* Additionally, none of the neighbors were named parties in this case, and the Steagalls have not established that any statements of their neighbors were made in a representative capacity of the Association. *Compare MP Equip. Leasing, Inc.*, 2024-Ohio-5495, at ¶ 27 (10th Dist.) ("Mr. Peterson was a plaintiff in the present case, and Mr. Pack's affidavit reiterated statements Mr. Peterson made in both his personal capacity and his capacity as an officer of MP."). Therefore, we reject the Steagalls' claim that any statements from their neighbors regarding whether they sought or obtained approval from the Association before making any improvements to their lots were not hearsay as admissions by a party opponent.

before it.  The Steagalls argue that the Association failed to establish that there was no genuine issue of material fact as to whether the Steagalls had violated the restrictions contained in the Declaration.  They further claim that the Steagall Affidavit refuted the Association's claims and established that there was a genuine issue of material fact as to whether they violated the restrictions.

{¶ 36} "A claim for declaratory judgment is a civil action that provides a remedy in addition to other available legal and equitable remedies." *Youngstown City School Dist. Bd. of Edn. v. State*, 2018-Ohio-2532, ¶ 8 (10th Dist.).  "The three essential prerequisites for a declaratory judgment claim are: (1) a real controversy between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the rights of the parties." *Id*.  A trial court's determination of whether a claim is justiciable is reviewed for abuse of discretion.  Once a matter is found to be justiciable, a trial court's holdings regarding questions of law are reviewed de novo.  *Id*.

{¶ 37} The Association submitted the Dawson Affidavit in support of its motion for summary judgment.  Dawson averred that she was the Association's property manager and had "personal knowledge of the facts at issue in this matter and knowledge obtained by reviewing the records of the Association" and that all averments in her affidavit were based on that personal knowledge.  (Dawson Aff. at ¶ 6.)  Dawson averred that, beginning in or around 2019, the Steagalls violated the signage restriction by posting "a conspicuous permanent 'No Trespassing' sign."  (Dawson Aff. at ¶ 18.)  Dawson further averred that the Steagalls installed new improvements or modified existing improvements without requesting or obtaining prior written consent from the Association, including installing a patio on the rear of their lot, installing landscaping/boundary walls on the sides of their lot, and modifying the landscaping on their lot.  (Dawson Aff. at ¶ 19.)  Photographs were attached to the Dawson Affidavit depicting the boundary walls and patio.  Dawson averred there were no similar boundary walls on any other lot in Whitney Woods.  There were also photographs depicting "the open storage of building materials and/or trash" on the Steagalls' lot attached to the Dawson Affidavit.  (Dawson Aff. at ¶ 23.)  Dawson further averred that the Steagalls made additional modifications to their lot without requesting or obtaining approval from the Association, including by planting trees along the property lines, installing a drainage system, and by installing stakes and strings to make the

boundaries of their lot. (Dawson Aff. at ¶ 40.) Dawson averred that the Association requires all owners to request approval for modifications to the exterior portions of their lots, that there were no structures similar to the Steagalls' boundary walls on any other lot in Whitney Woods, and that there was no open storage of trash or building materials on any other lot in Whitney Woods.

{¶ 38} The Steagalls argue that they refuted the alleged violation of the storage restrictions through the Steagall Affidavit. The Steagall Affidavit averred that the Steagalls had never maintained a nuisance on their property or otherwise interfered with a neighboring property. The Steagall Affidavit also averred that the Steagalls "have never openly stored waste materials on our Property *other than for a week or less*." (Emphasis added.) (Steagall Aff. at ¶ 15.) Thus, rather than refuting the Association's claim that the Steagalls violated the nuisance and storage restrictions, the Steagall Affidavit constituted an admission that the Steagalls openly stored waste materials on their lot, albeit for brief periods. The Steagalls also assert that the materials shown in the photographs attached to the Dawson Affidavit were not trash but were usable construction materials such as bricks and wood. Assuming without deciding that the materials shown in the photographs did not constitute "trash," that would not negate the Steagalls' admission to open storage of materials, which would also violate the storage restrictions and could constitute a nuisance.

{¶ 39} The Steagalls further argue that there was a genuine issue of material fact as to whether they violated the preapproval restriction, asserting that other homeowners in Whitney Woods made changes to their lots without prior approval from the Association. However, as explained above, the portions of the Steagall Affidavit asserting that other owners made unauthorized improvements or modifications were based on hearsay and therefore were not appropriate evidence for summary judgment. Absent the hearsay statements, the Steagall Affidavit did not refute Dawson's assertions that the Association required prior authorization for improvements or modifications to lots made by other homeowners.

{¶ 40} Dawson averred that beginning in or around 2019 the Steagalls installed new improvements and modified existing improvements on their lot without requesting or obtaining prior written consent from the Association, including installing a patio on the rear of their lot and boundary walls on the sides of the lot. The Dawson Affidavit included

photographs depicting the patio and the boundary walls. The Dawson Affidavit further averred that the Steagalls made additional modifications to their lot while the HUD claim was pending, without requesting or receiving approval from the Association. In response, the Steagall Affidavit averred that "[t]he 'wall' referenced by the HOA is an edging liner to my garden bed that has been in its current condition since prior to 2017." (Steagall Aff. at ¶ 17.) The Steagall Affidavit did not address the patio or other improvements referred to in the Dawson Affidavit. The Steagall Affidavit further averred that the Steagalls "have not performed construction or new improvement work on the Property without approval from the HOA." (Steagall Aff. at ¶ 18.)

{¶ 41} As noted above, in *Kiser* this court recently clarified whether a "self-serving" affidavit from a non-moving party, such as the Steagall Affidavit in this case, can create a genuine issue of material fact precluding summary judgment. The *Kiser* decision held that " 'self-serving' testimonial evidence that conforms to the requirements of Civ.R. 56(C) must be considered by the trial court and treated as any other evidence in the record at summary judgment." *Kiser*, 2023-Ohio-2136, at ¶ 24 (10th Dist.). However, our holding in *Kiser* does not mean that every affidavit from a non-moving party is sufficient to create a genuine issue of material fact. *Kiser* favorably cited an earlier decision asserting that a " 'party may not establish a material issue of fact in opposition to summary judgment by submitting a self-serving affidavit presenting nothing more than bare contradictions of other competent evidence and conclusory statements of law.' " *Id.* at ¶ 21, quoting *Wolf v. Big Lots Stores, Inc.*, 2008-Ohio-1837, ¶ 12 (10th Dist.). *See Eichenberger v. Tucker*, 2013-Ohio-805, ¶ 9 (10th Dist.) ("[T]he evidence necessary to create a genuine issue of material fact must be more than just bare, unsupported assertions."). This court has reached a similar conclusion in other decisions. *See, e.g., UAP-Columbus JV326132 v. Young*, 2014-Ohio-4590 (10th Dist.). In *Young*, a party seeking summary judgment on a foreclosure claim submitted an affidavit from an employee of the loan servicer attesting to the status of the defendant's account and averring that no payments had been made for July 2009 and the months thereafter. *Id.* at ¶ 16. The motion for summary judgment also included documents detailing loan payments and the balance remaining on the note. *Id.* In reply, the defendant "averred in his affidavit only that he made payments on the note after July 9, 2009." *Id.* This court found that such a conclusory statement was insufficient to create a genuine issue

of material fact because the defendant "fail[ed] to specify in the affidavit when those payments were made and the amount of such payments and otherwise fail[ed] to provide any evidence to support his claim." *Id.* at ¶ 18.

{¶ 42} Similar to *Young*, with respect to the preapproval restriction, the Steagall Affidavit contains nothing more than bare contradictions of the Association's claims and fails to provide any evidence to support the Steagalls' assertion that they did not violate that restriction. The Dawson Affidavit alleged that the Steagalls made various specific improvements to their lot without requesting or receiving prior approval from the Association. In the Steagall Affidavit, Kenneth Steagall admitted to constructing the boundary walls, although he disputed their nature and function, and did not deny making any of the other improvements alleged in the Dawson Affidavit. Rather, the Steagall Affidavit contained a bare assertion that the Steagalls did not make any improvements without prior approval but failed to present any supporting evidence for this claim, whether in the form of detailed averments, supporting documentation, or other evidence permitted under Civ.R. 56. If the Steagalls requested and obtained prior written approval from the Association before making improvements to their lot, then there should be some documentary evidence of the request and approval.[8] However, no such evidence was provided by the Steagalls, either as an exhibit to the Steagall Affidavit or otherwise as part of their memorandum in opposition to summary judgment. Notably, the Steagall Affidavit included copies of emails from other homeowners, which Steagall asserts establish that there was an informal practice of simply giving neighbors notice of upcoming projects rather than requesting prior approval from the Association. It also included an email from Kenneth Steagall advising the Association that he planned to replace dead trees on the Steagalls' lot and the Association's response requesting that he submit an architectural modification form to be approved by the Association.[9] However, there were no documents

---

[8] Our holding in this case should not be construed to mean that documentary evidence is always necessary to support a non-moving party's "self-serving" affidavit; rather, under the facts in this case, where the preapproval restriction required prior *written* approval from the Association, we note that the Steagall Affidavit did not include any documentary evidence to support the assertion that the Steagalls had not violated that restriction.

[9] The Steagall Affidavit averred that the written notice of his intention to replace dead trees was submitted "[b]ecause the [Association] sued me," which seems to imply that he would not have submitted prior notice to the Association absent the lawsuit. (Steagall Aff. at ¶ 6.)

attached to the Steagall Affidavit establishing written requests for approval of the boundary walls, the patio, or any of the other improvements that were specifically cited in the Dawson Affidavit. Moreover, the Steagall Affidavit did not affirmatively aver that the Steagalls received prior approval for those improvements; rather, the Steagall Affidavit contained only a broad assertion that the Steagalls had not made any improvements without prior approval from the Association. Notwithstanding our recent decisions acknowledging that a self-serving affidavit may create a genuine issue of material fact, we conclude that, under the circumstances in this case, the Steagall Affidavit fails to establish a genuine issue of material fact as to whether the Steagalls violated the preapproval restriction because it contains nothing more than Kenneth Steagall's bare assertion that they did not, without any supporting evidence for that assertion.

{¶ 43} Based on our review of the record and the trial court's decision, we conclude the trial court analyzed the evidence before it and did not err by granting declaratory judgment for the Association. Accordingly, we overrule the Steagalls' second assignment of error.

### E. The Steagalls' claim that the trial court erred by granting injunctive relief for the Association

{¶ 44} In their third assignment of error, the Steagalls argue the trial court erred by issuing an injunction ordering them to bring their lot into compliance with the Declaration. The Steagalls assert the trial court erred by concluding the Association was entitled to a statutory injunction and instead should have applied the traditional standards for injunctive relief. The Steagalls further argue that if those traditional standards had been applied, the evidence failed to establish that the Association was entitled to an injunction.

{¶ 45} "A party seeking a permanent injunction 'must demonstrate by clear and convincing evidence that they are entitled to relief under applicable statutory law, that an injunction is necessary to prevent irreparable harm, and that no adequate remedy at law exists.' " *McDowell v. Gahanna*, 2009-Ohio-6768, ¶ 9 (10th Dist.), quoting *Acacia on the Green Condominium Assn. v. Gottlieb*, 2009-Ohio-4878, ¶ 18 (8th Dist.). However, the Supreme Court of Ohio has held that "when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction 'need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law[.]' " *Ackerman v. Tri-City Geriatric & Health*

*Care, Inc.*, 55 Ohio St.2d 51, 56 (1978), quoting *Stephan v. Daniels*, 27 Ohio St. 527, 536 (1875). Despite the broad language in *Ackerman*, Ohio courts have concluded that not all statutory injunctions fit within the scope of that exception. *Jackson v. Bartec, Inc.*, 2010-Ohio-5558, ¶ 31 (10th Dist.) ("Not all statutory injunctions fall within the *Ackerman* rule."); *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 268 (1st Dist. 2000) (discussing an earlier decision holding that "the rule in *Ackerman* is limited to those statutes that contain specific criteria that the court must use in determining entitlement to an injunction").

{¶ 46} The Association sought injunctive relief under R.C. 5312.13, which provides as follows:

> The owners association and all owners, residents, tenants, and other persons lawfully in possession and control of any part of an ownership interest shall comply with any covenant, condition, and restriction set forth in any recorded document to which they are subject, and with the bylaws and the rules of the owners association, as lawfully amended. Any violation is grounds for the owners association or any owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action.

{¶ 47} The trial court applied *Ackerman* in concluding that the Association was entitled to an injunction. Notwithstanding the trial court's application of *Ackerman*, under the circumstances in this case, we need not resolve whether R.C. 5312.13 authorizes issuance of a statutory injunction under *Ackerman* because, based on our review of the evidence, the Association established that it satisfied the traditional requirements for injunctive relief. *See Jackson* at ¶ 32.

{¶ 48} The Steagalls argue the record fails to establish that the Association would suffer irreparable harm or that they would continue to make unauthorized modifications to their lot if an injunction was not granted. They also argue the Association failed to establish that it had no adequate remedy at law.

{¶ 49} Other courts have found that injunctive relief was an appropriate remedy for violations of restrictive covenants such as those in the Declaration, because the violations caused irreparable harm to other homeowners in a community or to the community association and there was no adequate remedy at law. *Gottlieb*, 2009-Ohio-4878, at ¶ 31

(8th Dist.); *Baker v. Adams*, 2006-Ohio-3232, ¶ 27 (3d Dist.). In *Baker*, the plaintiffs were homeowners who sued to enforce a deed restriction limiting the placement and height of a boat shelter on a neighboring lot. *Baker* at ¶ 5-7. The deed restriction limited boat shelters to no more than seven feet in height; the defendants had built a boat shelter that was nine feet, four inches high. *Id.* at ¶ 6-7. Following a bench trial, the trial court found that the boat shelter violated the height restriction and granted an injunction ordering modification of the boat shelter. *Id.* at ¶ 8. On appeal, in relevant part, the defendants argued the trial court erred because there was no evidence or proof of irreparable injury to the plaintiffs. *Id.* at ¶ 24. The Third District Court of Appeals disagreed, finding that the deed restrictions were of value "because they guarantee a uniform and 'aesthetically pleasing neighborhood.' " *Id.* at ¶ 14. The appellate court noted that the defendants' boat shelter was substantially taller than allowed under the deed restrictions and therefore stood higher than all other boat shelters on the same waterway. "As a result, the uniform and 'aesthetically pleasing neighborhood' is diminished." *Id.* at ¶ 27. Therefore, the appellate court concluded, the injunction was proper because the plaintiffs had established that they lacked an adequate remedy at law and had suffered sufficient harm to warrant injunctive relief. *Id.*

{¶ 50} The Eighth District similarly concluded in *Gottlieb* that a condominium association established irreparable harm arising from an individual unit owner's violation of a rule requiring owners to obtain a permit prior to commencing renovations in their unit. *Gottlieb* at ¶ 31. The association's property manager stated that the rule was implemented to ensure that contractors were aware of the association's rules, so as not to disturb other owners and to verify the renovations were compliant with building codes and that contractors were registered and possessed sufficient insurance to cover potential damages. *Id.* at ¶ 4. After the defendant had electrical and plumbing work performed without obtaining a permit, the association sued seeking an injunction to prevent him from conducting further renovations without obtaining a permit. *Id.* at ¶ 7-10. The trial court granted summary judgment for the association on its claims. *Id.* at ¶ 12. On appeal, the defendant argued the association failed to establish any of the elements required for a permanent injunction. *Id.* at ¶ 15. The defendant admitted he had electrical and other work performed without determining if the contractors were insured or had obtained the

appropriate city permits, and that he planned to have plumbing work done in the future. *Id.* at ¶ 29. The association's property manager testified it was crucial for unit owners to obtain a permit for renovations and for contractors to be insured to protect all residents of the building because poor workmanship could affect the shared plumbing and electrical lines. *Id.* at ¶ 30. Based on this evidence, the appellate court concluded that the association demonstrated that injunctive relief was necessary to prevent irreparable harm. *Id.* at ¶ 31. The court further concluded that the defendant's "history of complete disregard for the association's requirements is highly indicative that the same problem may arise in the future when he continues with plumbing work." *Id.* at ¶ 43.

{¶ 51} In the present case, the Declaration provides that the restrictions imposed on lots in Whitney Woods were for the purpose of protecting the value and desirability of the property. The Declaration also states that irreparable harm will result from violation of the restrictions and authorizes parties to seek injunctive relief to enforce the restrictions.[10] Courts have held that such clauses do not necessarily establish that irreparable harm results from breach of a restrictive covenant, but that it may be a factor weighing in favor of a finding of irreparable harm. *See Aero Fulfillment Servs., Inc. v. Tartar*, 2007-Ohio-174, ¶ 18 (1st Dist.).

{¶ 52} Dawson averred in her affidavit that the Association attempted to use informal means to persuade the Steagalls to cure their violations of the restrictions before imposing fines or initiating litigation but that the Steagalls refused to do so. Dawson stated that the Steagalls denied violating the restrictions and made additional unauthorized improvements while the HUD claim was pending. After the HUD claim was closed, the Association again requested that the Steagalls correct the existing violations and request approval for any future modifications. Dawson averred that the Steagalls again denied violating the restrictions. Dawson stated that there were no structures similar to the Steagalls' boundary walls on any other lot in Whitney Woods. As explained above, the Steagall Affidavit contained admissions that the Steagalls had placed signs and openly

---

[10] The sixth paragraph of the opening clauses of the Declaration states "[i]t is hereby declared that irreparable harm will result to the Developer and other beneficiaries of this Declaration by reason of violation of the provisions hereof or default in the observance thereof and therefore, each Owner shall be entitled to relief by way of injunction, damages or specific performance to enforce the provisions of this Declaration as well as any other relief available at law or in equity." (Pl.'s Ex. B at 1-2, attached to Compl.)

stored construction material on their lot. The Steagall Affidavit also contained an admission to construction of the boundary walls without prior approval from the Association, although it characterized the walls as merely being garden edging liners. Thus, the evidence in this case established that the Steagalls violated the restrictions in the Declaration and, similar to *Gottlieb*, the Steagalls' actions demonstrated a likelihood that the violations would be maintained, in particular the boundary walls, or that similar violations would occur in the future. Under these circumstances, we conclude the Association established that a permanent injunction was necessary to prevent irreparable harm and that no adequate remedy at law existed. Therefore, setting aside the question of whether *Ackerman* applies to R.C. 5312.13, the trial court did not err by granting an injunction ordering the Steagalls to bring their lot into compliance with the Declaration.

{¶ 53} Accordingly, we overrule the Steagalls' third assignment of error.

**F. The Association's claim for attorney fees related to the HUD claim**

{¶ 54} We now turn to the Association's cross-appeal, in which it argues the trial court erred by ruling it was not entitled to assess any of the attorney fees or costs related to its defense of the HUD claim against the Steagalls' lot, other than the proportionate $500 special assessment imposed in June 2021. The Association claims the costs incurred in responding to the HUD claim were chargeable to the Steagalls' lot under the terms of the Declaration. The Steagalls argue the Declaration only authorizes the Association to recover attorney fees from a lot owner if those fees related to enforcement of the Declaration, and that the fees incurred in defending the HUD claim did not relate to enforcement of the Declaration.

{¶ 55} "Ohio courts follow the so-called 'American rule,' which requires that each party involved in litigation pay his or her own attorney fees." *Columbus Check Cashers, Inc. v. Rodgers*, 2008-Ohio-5498, ¶ 7 (10th Dist.). *See Heather Lake Assn. v. Billiter*, 2017-Ohio-8387, ¶ 35 (5th Dist.) ("Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation in the absence of a statute or enforceable contract."). This court has acknowledged three "well-recognized" exceptions to the American rule: (1) when a statute specifically provides for recovery of attorney fees by a prevailing party, (2) when there has been a finding of bad faith, and (3) when a contract between the parties provides

for fee shifting.  *Columbus Check Cashers, Inc.* at ¶ 7.  Applying principles of contract law, the Supreme Court of Ohio has held that provisions in a homeowners' association declaration imposing responsibility for attorney fees on a defaulting owner are enforceable "so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case."  *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32 (1987), syllabus.  *See Northwoods Condominium Owners' Assn. v. Arnold*, 2002-Ohio-41, ¶ 20 (8th Dist.) ("The basis for the Supreme Court's decision in *Nottingdale* was the principle that two parties in a noncommercial transaction, may lawfully contract to require the unsuccessful party (in a suit between them) to pay attorney fees.").  Generally, exceptions to the 'American rule' are narrowly construed.  *See Morlatt v. Johnson*, 2022-Ohio-4155, ¶ 40 (4th Dist.) (stating that exceptions to the general rule that each party is responsible for its own attorney fees are to be narrowly construed); *see also Nour v. Shawar*, 2014-Ohio-3016, ¶ 9 (10th Dist.) (stating that contractual indemnification provisions are to be strictly construed).

{¶ 56} The Declaration is a contract, and we apply the principles of contract interpretation in evaluating the clauses providing for recovery of attorney fees.  *See Nottingdale* at 34-37 (applying principles of contract law to interpret a condominium association declaration); *O'Bannon Meadows Homeowners Assn. v. O'Bannon Properties, LLC*, 2013-Ohio-2395, ¶ 19 (12th Dist.) ("A declaration is a contract, and as such, construction of the Declaration is a matter of law."); *Murtha v. Ravines of McNaughton Condominium Assn.*, 2010-Ohio-1325, ¶ 13 (10th Dist.) (noting that condominium declarations and bylaws are contracts between the association and the purchaser); *Lake Pointe Townhomes Homeowners' Assn. v. Bruce*, 2008-Ohio-5264, ¶ 10 (8th Dist.) ("Because the association's right to attorney fees is governed by the homeowners agreement, it is contractual in nature.").  "When construing the terms of a written contract, the court's objective is to give effect to the intent of the parties, which is presumed to rest in the language the parties chose to employ."  *Mulvey v. GuideOne Mut. Ins. Co.*, 2017-Ohio-7902, ¶ 15 (10th Dist.).  Common words appearing in a contract "will be given their ordinary meaning unless manifest absurdity results."  *Id.*  When the terms of a contract are clear and unambiguous, the court need not go beyond the plain language of the contract to determine the rights and obligations of the parties.  *Id.*

{¶ 57} The Association cites three provisions of the Declaration relating to recovery of attorney fees. Article VII, Section D of the Declaration authorizes the board of the Association to seek judicial relief for violations of the Declaration and provides that "[i]f the Board expends funds for attorneys' fees or litigation expenses in connection with enforcing this Declaration, the Association documents or the Rules against any Owner, tenant, guest or invitee of any Owner, the amount shall be due and payable by such Owner and shall be a Lot Assessment against such Owner's Lot." (Pl.'s Ex. B at 17, attached to Dawson Aff.) Article IX, Section E of the Declaration states that "[t]he Board may levy a Lot Assessment against any Lot(s) and the Owner(s) thereof to reimburse the Association for costs incurred on behalf of the Lot(s), including without limitation, . . . costs of enforcement (including court costs and the Association's legal fees, if applicable) relative to any deed restriction violations which exist on such Lot(s)[.]" (Pl.'s Ex. B. at 20, attached to Dawson Aff.) Finally, Article XI, Section B of the Declaration provides that it "may be enforced by any proceeding at law or in equity by . . . the Association . . . against any person(s) violating, or attempting to violate, any covenant or restriction, to restrain and/or enjoin violation, to obtain a decree for specific performance as to removal of any non-conforming improvement, and to recover all damages, costs of enforcement and any other costs incurred (including without limitation, reasonable attorneys' fees)." (Pl.'s Ex. B at 23, attached to Dawson Aff.)

{¶ 58} Each of the relevant provisions of the Declaration relates to recovery of attorney fees incurred when the Association acts to *enforce* the Declaration. *See Kurtz v. W. Properties, L.L.C.*, 2011-Ohio-6726, ¶ 57 (10th Dist.) (holding that language of fee-shifting provision made clear the parties' intent for attorney fees to be awarded in any action to enforce an agreement). Thus, we must consider whether the Association's defense of the HUD claim constituted enforcement of the Declaration. Article II of the Declaration defines certain terms used in the Declaration, but it does not include a definition of the term "enforcement." Absent a specific definition in the Declaration, we apply the ordinary meaning of the term "enforcement." Generally, to "enforce" may be defined as "[t]o give force or effect to (a law, etc.), to compel obedience to." *Black's Law Dictionary* (10th Ed. 2014).

{¶ 59} In the HUD claim, the Steagalls alleged that the Association engaged in selective enforcement of the restrictions contained in the Declaration, ignoring violations

by other residents while immediately contacting the Steagalls about alleged violations. However, the allegations in the HUD claim also went beyond the measures taken by the Association to compel the Steagalls to comply with the Declaration. The Steagalls alleged one neighbor had sprayed chemicals on their lawn that killed their grass and that another neighbor's dogs frequently trespassed onto the Steagalls' property and attacked Kenneth Steagall. The Steagalls claimed the Association failed to intervene to address these issues despite multiple requests. The Steagalls also asserted generally that the property manager was not as responsive to their requests for assistance as to requests from other Whitney Woods homeowners. The Steagalls further alleged that other residents of Whitney Woods responded favorably when the Association president suggested that the neighborhood gate be closed earlier than normal during the "Black Lives Matter" protests but failed to respond to a similar suggestion from Kenneth Steagall when the January 6, 2021 Capitol riot occurred. These latter allegations addressed matters outside the Association's efforts to compel the Steagalls to comply with the restrictions contained in the Declaration.

{¶ 60} As explained above, exceptions to the "American rule" are strictly construed. The Declaration clearly provides that the Association may recover attorney fees and costs incurred when enforcing the restrictions contained in the Declaration—i.e., when compelling a homeowner to comply with those restrictions. Under the circumstances in this case, the Steagalls' racial discrimination allegations in the HUD claim related to enforcement of the Declaration *and* additional matters beyond the Association's efforts to enforce the Declaration. Therefore, we conclude the Association's defense of the HUD claim is not properly characterized as enforcement of the Declaration and the attorney fee provisions in the Declaration do not authorize the Association to assess the full amount of attorney fees and costs incurred in defending the HUD claim against the Steagalls' lot.

{¶ 61} Accordingly, we overrule the Association's cross-assignment of error.

## IV. Conclusion

{¶ 62} For the foregoing reasons, we overrule the Steagalls' three assignments of error and the Association's cross-assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.